**FILED**

TIME _10:47 AM_

NOV 30 2017

RICHARD W. NAGEL
Clerk of Court
CINCINNATI, OHIO

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

IN THE MATTER OF THE SEARCH OF
CELLULAR TELEPHONES DESCRIBED
AS:

LG Model: LGMP260  (Black)
S/N: 708CYAS331400
IMEI: 352130-09-331400-2

LG Model: LG-TP260  (Black)
FCC ID: ZNFTP260
S/N: 705CYCV280819
IMEI: 355265-08-280819-7

LG Model: LGMS428  (Gold)
FCC ID: ZNFK428
S/N: 611CYEA948836
IMEI: 358479-07-948836-1

LG Model: LGMS210 (Silver)
FCC ID: ZNFM210
S/N: 703CYRN511678
IMEI: 357588-08-511678-1

**Located at the** DEA Evidence Room
36 E. 7th Street, Suite 1900
Cincinnati, Ohio

CASE NO. **1 : 17 M J -928**

**UNDER SEAL**

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION UNDER RULE 41 FOR A**
**WARRANT TO SEARCH AND SEIZE**

I, Philip V. Brown, a Special Agent with the Drug Enforcement Administration (DEA),

being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—four

electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

      2.     I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since August 2010. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18, of the United States Code.

      3.     I am currently assigned to the Cincinnati Resident Office of the DEA. I have received specialized training from the DEA, including the 19-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have also received additional formal training from DEA to include the Basic Telecommunications Exploitation Program and the Internet Telecommunications Exploitation Program, which were specifically designed to assist agents in identifying and subsequently exploiting telephonic and internet related devices utilized in the commission of a Controlled Substance Act (CSA) violation.

      4.     As a DEA agent, I have participated in over 50 criminal investigations and in the execution of over 50 search warrants seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code). These warrants covered the search of locations to include: residences of drug traffickers and their co-conspirators/associates; drug manufacturing operations; and, stash houses used as storage and distribution points for controlled substances, as well as the search of Facebook profiles and email accounts from service providers such as Yahoo! and Google.

2

5.      Through my training and experience, I know that those involved in the illegal sale and distribution of narcotics often store in their cell phones and mobile devices, contact information for their associates so that they may stay in ready contact with their customers and source(s) of supply. Often the information stored in the contact list may be in the form of a code to conceal the true identity of the contact.

6.      Through my training and experience, I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of cellular telephones or use of multiple telephones or other devices, to avoid detection by law enforcement.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      The property to be searched:

**Subject Telephone 1:** LG Model: LGMP260  (Black)
S/N: 708CYAS331400
IMEI: 352130-09-331400-2

**Subject Telephone 2:** LG Model: LG-TP260  (Black)
FCC ID: ZNFTP260
S/N: 705CYCV280819
IMEI: 355265-08-280819-7

**Subject Telephone 3:** LG Model: LGMS428  (Gold)
FCC ID: ZNFK428
S/N: 611CYEA948836
IMEI: 358479-07-948836-1

**Subject Telephone 4:** LG Model: LGMS210 (Silver)
FCC ID: ZNFM210
S/N: 703CYRN511678
IMEI: 357588-08-511678-1

3

9.      The subject telephones were located during the search of 1316 Carolina Avenue, Apartment #2, Cincinnati, Ohio, referred hereinafter to as "**Subject Telephone 1**" through "**Subject Telephone 4**". The above items are currently in the custody of DEA Cincinnati.

10.     The applied-for warrant would authorize the forensic examination of the **Subject Telephones** for the purpose of identifying electronically stored data particularly described in Attachment B.

## SUMMARY OF INVESTIGATION

11.     The Drug Enforcement Administration (DEA) is investigating an organization engaged in a conspiracy involving the suspected distribution of controlled substances, more specifically, heroin and fentanyl, Schedule I and Schedule II controlled substances, in violation of, inter alia, 21 U.S.C. § § 841(a)(1) and 846.

12.     On October 2, 2017, United States District Judge Michael R. Barrett, Southern District of Ohio, signed an order authorizing the interception of wire communications send to and from telephone: 404-539-3948 and an order authorizing the interception of wire communications for various and changing phones used by Anthony PENNY. On November 1, 2017, United States District Judge Michael R. Barrett signed an order authorizing the continued interception of wire communications and the initial interceptions of electronic communications send to and from phone: 917-794-0597; the initial interception of wire and electronic communications send to and from phone: 513-383-7375; and the continued roving interception of wire communications over various and changing telephones used by PENNY and the initial interception of electronic communications over various and changing phones used by PENNY. Based on intercepted wire communications, I learned that PENNY was receiving phone calls from several different phone numbers of individuals requesting what I believe to be controlled substances and discussing the suspected payment to PENNY for controlled substances.

4

13.     On November 17, 2017, United States Magistrate Judge Stephanie K. Bowman signed search warrants for 2822 Lawndale Avenue, Apartment #3, Cincinnati, Ohio, a location identified as a stash house utilized by PENNY, 1316 Carolina Avenue, Apartment #2, Cincinnati, Ohio and one other locations believed to be involved in the conspiracy.

14.     On November 21, 2017, at approximately 6:02 a.m., agents executed a search warrant at 2822 Lawndale Avenue, Apartment #3, Cincinnati, Ohio. During a search of the location, agents located approximately nine (9) and a half kilograms of suspected heroin/fentanyl, packaging material, digital scales, and square and rectangular metal kilogram-style press pieces.

15.     On November 21, 2017, United States Magistrate Judge Stephanie K. Bowman signed complaint affidavits and arrest warrants for PENNY and two other individuals. Law enforcement officers attempted to arrest PENNY at his residence, but PENNY fled on foot. Intercepted communications indicated that PENNY was headed to the stash house located at 2822 Lawndale Avenue, Apartment #3, Cincinnati, Ohio. Law enforcement officers observed PENNY try to enter the front entrance to 2822 Lawndale Avenue, Cincinnati, Ohio and attempted to arrest PENNY again. PENNY attempted to flee on foot, but was ultimately apprehended by law enforcement officers.

16.     On November 21, 2017, agents executed five search warrants at locations throughout the Cincinnati area, to include 1316 Carolina Avenue, Apartment #2, Cincinnati, Ohio in order to seize evidence related to the PENNY Drug Trafficking Organization's heroin and fentanyl trafficking conspiracy, and to arrest PENNY and other co-conspirators, including Sean O'DONNELL.

17.     During the search of 1316 Carolina Avenue, Apartment #2, Cincinnati, Ohio, law enforcement officers observed three digital scales in that contained a white-powdery residue. The scales were located near two empty boxes of plastic sandwich bags, which I know, based on

5

my training and experience, are used to package and distribute controlled substances. In addition, a Smith & Wesson .40 caliber handgun was found in O'DONNELL's coat pocket located in the living/dining room area. A check of the serial number revealed that the firearm was stolen a few years ago from a law enforcement officer in Indiana. Based on the stolen firearm, drug paraphernalia and intercepted conversations with PENNY, O'DONNELL was arrested. During the post-arrest interview, O'DONNELL stated that he was not involved with the distribution of heroin/fentanyl, but admitted that he purchased crack cocaine from PENNY on a weekly basis and that he had been purchasing cocaine from PENNY since the fall of 2016. **Subject Telephone 1** was located and seized from O'DONNELL's person. **Subject Telephones 2** through **4** were located in O'DONNELL's vehicle parked along the street in front of O'DONNELL's residence. I know, based on training and experience, that drug dealers will often utilize multiple phones in furtherance of a drug-trafficking conspiracy and believe that O'DONNELL used multiple phones to communicate with customers and sources of supply. I believe that probable cause exists to search the Subject Telephones and that evidence indicative of a drug-trafficking conspiracy will be located.

## TECHNICAL TERMS

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless

6

telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to

7

store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19.     Based on my training, experience, and research, I know that these types of devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21.     *Nature of* examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Telephones consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.     *Manner of* execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Telephones described in Attachment A to seek the items described in Attachment B.


Respectfully submitted,


Philip V. Brown
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on this 30 day of November, 2017.


HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched:

**Subject Telephone 1:** LG Model: LGMP260  (Black)
S/N: 708CYAS331400
IMEI: 352130-09-331400-2

**Subject Telephone 2:** LG Model: LG-TP260  (Black)
FCC ID: ZNFTP260
S/N: 705CYCV280819
IMEI: 355265-08-280819-7

**Subject Telephone 3:** LG Model: LGMS428  (Gold)
FCC ID: ZNFK428
S/N: 611CYEA948836
IMEI: 358479-07-948836-1

**Subject Telephone 4:** LG Model: LGMS210 (Silver)
FCC ID: ZNFM210
S/N: 703CYRN511678
IMEI: 357588-08-511678-1

hereinafter the "Subject Telephones"

The above items are currently located at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, Ohio.

This warrant authorizes the forensic examination of the Subject Telephones for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the Subject Telephones described in Attachment A that relate to violations of **21 U.S.C. §§ 841(a)(1) and 846** and involve **Sean O'DONNELL, Anthony PENNY,** and other yet known and unknown individuals including:

   a.  Evidence that shows the Device was used to further facilitate the distribution of illegal narcotics;

   b.  lists of customers and related identifying information;

   c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e.  any information recording schedules or travel;

   f.  any and all stored telephone numbers;

   g.  any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

   h.  Any and all emails, sent, received, delete, draft and/or saved;

   i.  any and all voicemails;

   j.  any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

   k.  Any and all data retrieved from Apps on the device;

   l.  any and all entries made in a calendar and/or notebook feature;

   m.  any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.